**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
--------------------------------------------------------- X

DAVIDSON WELL DRILLING, LTD.,

             **Plaintiff,**

   **- against -**

BRISTOL-MYERS SQUIBB COMPANY,

            **Defendant.**

--------------------------------------------------------- X

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #
DATE FILED: 7/16/09
```

**OPINION AND ORDER**

**09 Civ. 1431 (SAS)**

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I.    INTRODUCTION

Davidson Well Drilling, Ltd. ("Davidson") brings this breach of contract action against Bristol-Myers Squibb Company ("BMS") to recover sums allegedly due and owed to Davidson arising from a construction project in Manati, Puerto Rico.  Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(7) ("Rule 12"), BMS moves to dismiss for lack of subject matter jurisdiction and for Davidson's failure to join an indispensable party, respectively.  For the foregoing reasons, BMS's motion to dismiss is granted.

## II.   BACKGROUND

### A.   Facts

#### 1.   Parties

Davidson is a foreign corporation chartered in Canada.[1]  BMS is a corporation organized and existing pursuant to New York laws with its principal place of business in New York.[2]  BMS is the parent company of Bristol-Myers Squibb Holdings Pharma Ltd. Liability Company ("BMS Holdings"),[3] a company duly organized under the laws of Switzerland.[4]  BMS Holdings maintains separate assets and bank accounts with separate officers and employees from BMS.[5]  BMS Holdings has an office in Manati and owns the Manati plant central to the contract.[6]

---

[1]    *See* Amended Complaint ("Am. Compl.") ¶ 2.

[2]    *See id.* ¶ 3.  BMS has offered evidence that it is incorporated in Delaware. *See* 5/5/09 Affidavit of Katherine Kelly, Senior Counsel of BMS, ¶¶ 2-3.  For purposes of this motion, it is inconsequential where BMS is organized.

[3]    *See* 5/11/09 Affidavit of Glenn Gerecke, Vice President and General Manager of BMS Holdings ("Gerecke Aff."), ¶ 2.

[4]    *See* 5/7/09 Affidavit of Gary Lewbel, Managing Officer of BMS Holdings, ¶ 2.

[5]    *See* Gerecke Aff. ¶ 2.

[6]    *See id.* ¶¶ 2, 6.

## 2. The Builder Agreement and Subsequent Amendment

In 2005, BMS Holdings became interested in an artesian well-drilling project in Manati, Puerto Rico ("the Manati Project").[7] On December 19, 2005, BMS Holdings entered into a Builder Agreement with Davidson, which provided that Davidson would perform well-drilling services for BMS Holdings in connection with the Manati Project (the "Builder Agreement").[8] The "Owner" in the Builder Agreement is identified as "Bristol Myers Squibb Holdings Pharma LTD Liability Company" with offices located in Manati, Puerto Rico.[9] Below the "Owner" definition is a form for "Addresses," which provides the addresses for notices to be sent. One sub-section of the "Addresses" form is entitled, "Owner, at:" which is filled in, "BristolMyersSquibbCompany Manati."[10] The Builder Agreement delineates the rights and obligations of BMS Holdings as "Owner" and Davidson as "Builder." The last page, however, reads, "Owner: Bristol-Myers

---

[7]    *See id.* ¶ 6.

[8]    *See id.*

[9]    12/19/05 Builder Agreement, Ex. A. to Gerecke Aff. ("Builder Agreement"), at 1.

[10]    *Id.*

3

Squibb Company" and is signed by Glenn Gerecke, whose title is listed as "VP &
General Manager."[11]

Later, Davidson and BMS Holdings entered into an amendment to the
Builder Agreement (the "Amendment").[12]  The Amendment was prepared by BMS
Holdings.[13]  The Amendment's title refers to the Builder Agreement as an
agreement between "Davidson Well Drilling Limited [and] BMS Holdings Pharma
Ltd. Liability Company."[14]  Again, the signature on the last page reads, "Owner:
Bristol-Myers Squibb Company" and is signed by Gerecke, whose title is listed as
"VP & GM."[15]

---

[11]    *Id.* at 11.  Gerecke states that he only has power to enter into contracts
for BMS Holdings, not BMS, and further that he has no authority to act on behalf
of or represent BMS.  *See* Gerecke Aff. ¶ 3.

[12]    *See* 6/28/07 Amendment No. 1 to Builder Agreement
("Amendment"), Ex. B to Gerecke Aff.

[13]    *See* Gerecke Aff. ¶ 8.

[14]    Amendment at 1.

[15]    *Id.* at 3.

4

## B.    Procedural History

### 1.    The Original and Amended Complaints

When the Complaint was first filed on February 13, 2009, it named two defendants: BMS and BMS Holdings.[16]  Throughout that Complaint, Davidson implicates both BMS *and* BMS Holdings for, inter alia, breaching the Builder Agreement.[17]  For example, Davidson alleged that *both* BMS and BMS Holdings "entered into a contract with regard to the [Manati] project[.]"[18]  The first cause of action claims that, "[i]n accordance with the aforesaid contract, *defendants* agreed to pay . . . Davidson for the drilling and installation of water wells for the [Manati] project."[19]

An exchange of letters regarding subject matter jurisdiction followed the filing of the Complaint.[20]  Eventually, Davidson acknowledged in a letter that naming BMS Holdings as a defendant "destroys [diversity] jurisdiction," because

---

[16]    *See* Complaint ("Compl.") ¶ 1.

[17]    *See id.* ¶ 11.

[18]    *Id.* ¶ 9.

[19]    *Id.* (emphasis added).

[20]    *See* Exs. B-D to 5/13/09 Affidavit of Andrew Calica, Attorney for BMS ("Calica Aff.") (letters to this Court regarding subject matter jurisdiction).

BMS Holdings is also an alien corporation.[21]  On April 23, 2009, Davidson filed

an Amended Complaint with BMS as the sole defendant,[22] claiming that BMS

breached the underlying contract,[23] that BMS was unjustly enriched by Davidson,[24]

and that BMS owes money for services provided.[25]  The Amended Complaint

omits all mention of BMS Holdings.  For example, Davidson now pleads that,

"[i]n or about 2005, the plaintiff, Davidson, and the defendant, [BMS] entered into

a contract with regard to the [Manati] project[.]"[26]  Davidson also decided not to

proceed with an alter ego claim against BMS that was in the original complaint.

---

[21]     4/14/09 Letter from Sheats & Associates, P.C., to this Court, Ex. D to
Calica Aff., at 1.  Davidson asserted in its Opposition Memorandum that it learned
that BMS Holdings was a foreign corporation only after it filed the original
Complaint.  *See* Davidson's Memorandum of Law in Opposition to BMS's Motion
to Dismiss ("Davidson Mem.").  However, in the original Complaint, Davidson
alleged that BMS Holdings "is and at all times material has been a foreign
corporation[.]"  Compl. ¶ 4.

[22]     *See* Am. Compl. ¶ 3.

[23]     *See id.* ¶ 10.

[24]     *See id.* ¶ 15.

[25]     *See id.* ¶ 19.

[26]     *See id.* ¶ 8.

## 2.     The Puerto Rico Action

On March 30, 2009, BMS Holdings filed a breach of contract action against Davidson in Puerto Rico.[27]  In that action, BMS Holdings claims that Davidson breached the Builder Agreement by failing to excavate soil within the parameters of the contract and by using untrained personnel and inadequate machinery, equipment, and materials.[28]  BMS Holdings claims damages of $3.5 million.[29]

## III.   LEGAL STANDARD

### A.     Subject Matter Jurisdiction

"Federal Courts are courts of limited jurisdiction and may not entertain maters over which they do not have subject matter jurisdiction."[30] Section 1332 of Title 28 of the United States Code confers subject matter jurisdiction to the federal district courts, giving them original jurisdiction over cases, in relevant part, "where the matter in controversy exceeds $75,000,

---

[27]     *See* Complaint of Puerto Rico Case No. C AC 2009-0903 401, Ex. F to Calica Aff.

[28]     *See id.* ¶ 18.

[29]     *See id.* ¶ 1.

[30]     *Braten v. Kaplan*, No. 07 Civ. 8498, 2009 WL 614657, at *3 (S.D.N.Y. Mar. 10, 2009) (citing *Wynn v. AC Rochester*, 273 F.3d 153, 157 (2d Cir. 2001)).

exclusive of interest and costs and is between . . . (2) citizens of a State and citizens or subjects of a foreign state[.]"[31]  "The general rule requiring complete diversity between opposing parties is explicit and unequivocal."[32]  "[T]he presence of aliens on two sides of a case destroys diversity jurisdiction."[33]

### B.    Rule 12(b)(1) Motion to Dismiss

Rule 12(b)(1) allows a party to assert by motion the defense that the Court lacks subject matter jurisdiction to hear a claim.  "In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a district court [] may refer to evidence outside the pleadings."[34]  Thus, a district court may refer to evidence such as sworn affidavits, correspondence between the parties, contracts, or other relevant documents.[35]  "A plaintiff asserting subject matter

---

[31]    28 U.S.C. § 1332(b)(2).

[32]    *International Shipping Co., S.A., v. Hydra Offshore, Inc.*, 875 F.2d 388, 391 (2d Cir. 1989).

[33]    *Corporacion Venezolana de Fomento v. Vintero Sales Corp.*, 629 F.2d 786, 790 (2d Cir. 1980) (citation omitted).  *Accord Mentor Ins. Co. (U.K.) Ltd. v. Brannkasse*, 996 F.2d 506, 512 (2d Cir. 1993) ("[T]he alignment of alien corporations as both plaintiffs and defendants defeats the allegation of diversity jurisdiction[.]").

[34]    *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) (citation omitted).

[35]    *See King's Gym Complex, Inc. v. Philadelphia Indem. Ins. Co.*, 314 Fed App'x 342, 343 (2d Cir. 2008) (citing *Makarova*, 201 F.3d at 113).

jurisdiction has the burden of proving by a preponderance of the evidence that it exists."[36]

### C.    Rule 12(b)(7) Motion to Dismiss

Rule 12(b)(7) allows a party to assert by motion the defense that the opposing party failed to join a party under Rule 19.  Like a Rule 12(b)(1) motion, a court deciding a Rule 12(b)(7) motion "may consider 'documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit.'"[37]

### D.    Rule 19 Joinder[38]

A court must analyze the factors set forth in Rule 19(a)(1) and 19(b) to determine if the non-joined party is necessary and indispensable, respectively, to proceed with the action.

---

[36]    *Makarova*, 201 F.3d at 113 (citation omitted).

[37]    *See Dunn v. Standard Bank London, Ltd.*, No. 05 Civ. 2749, 2006 WL 217799, at *3 (S.D.N.Y. Jan. 30, 2006) (quoting *Brass v. American Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993)).

[38]    Rule 19 no longer uses the terms "necessary" or "indispensable." However, the Second Circuit has stated that there is no "substantive difference between the present rule and the rule as applied by the district court prior to the 2007 amendment." *CP Solutions PTE, Ltd. v. General Elec. Co.*, 553 F.3d 156, 159 n.2 (2d Cir. 2009) (citing *Republic of Phil. v. Pimentel*, — U.S. —, 128 S.Ct. 2180, 2184 (2008) ("As the substance and operation of the Rule both pre- and post-2007 are unchanged, we will refer to the present, revised version.")).

[Rule] 19 sets forth a two-step test for determining whether the court must dismiss an action for failure to join an indispensable party. First, the court must determine whether an absent party belongs in the suit, i.e., whether the party qualifies as a necessary party under Rule 19(a) . . . . [W]here the court makes a threshold determination that a party is necessary under Rule 19(a), and joinder of the absent party is not feasible for jurisdictional or other reasons, . . . the court must finally determine whether the party is indispensable. If the court determines that a party is indispensable, then the court must dismiss the action pursuant to Rule 19(b).[39]

## 1. Necessary Parties

A party is "necessary" under Rule 19(a)(1) if

(A) in that person's absence, the court cannot accord complete relief among existing parties; or (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the party's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

---

[39] *Viacom Int'l, Inc. v. Kearney*, 212 F.3d 721, 724 (2d Cir. 2000) (citations and quotations omitted).

A party is necessary if any one of Rule 19(a)'s three criteria are met.[40] "The burden is on the moving party to show the nature of the material interests of the absent person in the subject matter of the suit."[41]

### a.    Rule 19(a)(1)(A)

A party is necessary under Rule 19(a)(1)(A) if, in that party's absence, the court cannot accord complete relief *among those already parties*."[42] If, for example, a court were to hold that the one joined party *is not* liable to the plaintiff, then the non-joined party's "obligations under that contract would remain undetermined at the conclusion of this litigation" – a scenario which Rule 19 seeks to avoid.[43] On the other hand, if a court were to hold that the one named party *is* liable to the plaintiff, then "[the joined defendant] would have an interest in

---

[40]    *See City of Syracuse v. Onondaga County*, 464 F.3d 297, 309 n.7 (2d Cir. 2006) ("Having determined that the requirements of Rule 19(a)(1) are satisfied, this Court need not address the arguments proffered concerning joinder under Rule 19(a)(2), given that the requirements of the Rule are set forth in the disjunctive.") (citation omitted). *City of Syracuse* refers to Rule 19(a)(1) and (a)(2), which are the equivalent of (a)(1)(A) and (a)(1)(B), respectively.

[41]    *Ashley v. American Airlines, Inc.*, 738 F. Supp. 783, 788 (S.D.N.Y. 1990) (citation omitted).

[42]    *Mastercard Int'l Inc. v. Visa Int'l Serv. Ass'n*, 471 F.3d 377, 385 (2d Cir. 2006) (quoting Fed. R. Civ. P. 19(a)(1)) (emphasis in original).

[43]    *Hovensa, L.L.C. v. Technip Italy S.P.A.*, No. 08 Civ. 1221, 2009 WL 690993, at *3 (S.D.N.Y. Mar. 16, 2009).

claiming over against [the absent defendant].  Thus, [the absent defendant] is properly seen as a 'required' or necessary party to claims arising out of the [] agreement."[44]

### b.    Rule 19(a)(1)(B)(i)

Rule 19(a)(1)(B)(i) deems a party as necessary if that party will be prejudiced by non-joinder.  Parties do not become necessary under Rule 19(a)(1)(B)(i) if they have merely a "strong interest" or if they would be "adversely affected" by the outcome of the litigation – rather, necessary parties "are only those parties whose ability to protect their interests would be impaired *because of* that party's absence from the litigation[.]"[45]  In addition, "if the nonparties' interests are adequately represented by an existing party, the suit will not impede or impair the nonparties' interests and therefore the nonparties will not be considered necessary."[46]

---

[44]    *Id.*

[45]    *Mastercard Int'l*, 471 F.3d at 387 (emphasis in original).

[46]    *Gibbs Wire and Steel Co., Inc. v. Johnson*, 255 F.R.D. 326, 329 (D. Conn. 2009) (quotations omitted). *Accord Continental Cas. Co. v. American Home Assur. Co.*, No. 05 Civ. 7874, 2008 WL 1752231, at *4 (S.D.N.Y. Apr. 14, 2008) ("When an identity of interest exists between two parties, and one of the parties will sufficiently represent those interests, the other party is not necessary to the litigation."); *Polargrid v. Videsh Sanchar Nigam Ltd.*, No. 04 Civ. 9578, 2006 WL 2266351, at *9 (S.D.N.Y. Aug. 7, 2006) ("Impairment may be minimized if

### c.   Rule 19(a)(1)(B)(ii)

Rule 19(a)(1)(B)(ii) deems an absent party necessary if the absence of that party will leave the existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations.  "[I]t would be extraordinarily inefficient to litigate the claims against" two parties to the same contract "separately and would potentially place those [parties] at risk of inconsistent judgments."[47]  "However, Rule 19 does not protect a party from logically inconsistent results, only inconsistent obligations."[48]  "The possibility of different damage awards is not sufficiently 'inconsistent' to invoke the protection of the Rule."[49]  "[T]he substantial risk of inconsistent obligations must be *caused by* the nonparty's absence in the case."[50]

---

the absent party is adequately represented in the suit, i.e., if there is another party in the suit with virtually identical interests who would be advancing virtually the same legal and factual positions.").

[47]    *Pik v. Institute of Int'l Educ.*, No. 08 Civ. 3909, 2008 WL 4922112, at *4 (S.D.N.Y. Nov. 10, 2008).

[48]    *Evergreen Marine Corp. v. Welgrow Int'l Inc.*, 942 F. Supp. 201, 206 (S.D.N.Y. 1996) (quotation omitted).

[49]    *Id.*

[50]    *Mastercard Int'l*, 471 F.3d at 388 (emphasis in original).

## 2.    Indispensable Parties

If a party is determined to be necessary, a court must then consider

whether a party is "indispensable" according to the following Rule 19(b) factors:

> (1) the extent to which a judgment rendered in the person's
> absence might prejudice that person or the existing party;
> (2) the extent to which any prejudice could be lessened or
> avoided by [] protective provisions in the judgment[,]
> shaping the relief[,] or other measures; (3) whether a
> judgment rendered in the person's absence would be
> adequate; and (4) whether the plaintiff would have an
> adequate remedy if the action were dismissed for
> nonjoinder.

"This determination is an equitable one and is left to a court's discretion."[51]

### a.    Prejudice to the Absent or Named Defendant

Adjudication of a case in the absence of a party is prejudicial when it

is "difficult to imagine how the issue of whether [the absent party] breached its

obligations under the [contract] would be resolved without its participation in the

litigation."[52]  In addition,

> while a judgment may not be res judicata or binding upon
> a non-party, it obviously does not mean either (a) that a
> court may never issue a judgment that in practice affects a
> non-party, or (b) that (to the contrary) the court may always

---

[51]    *Global Discount*, 960 F. Supp. at 709.

[52]    *Rubler v. Unum Provident Corp.*, No. 04 Civ. 7102, 2007 WL
188024, at *3 (S.D.N.Y. Jan. 25, 2007).

14

proceed without considering the potential effect on non-parties simply because they are not "bound" in the technical sense . . . . [T]he court must consider the extent to which the judgment may as a practical matter impair or impede [its] ability to protect [its] interest in the subject matter.[53]

### b.    Protective Measures that Could Lessen Prejudice

After determining that prejudice would result in the absence of the non-party, a court can either consider proposals by the parties or create its own mechanisms to lessen the effect of that prejudice.[54]  To allow both a suit in Federal Court and a suit in another court to proceed "would 'complicate and enlarge what would otherwise be a relatively straightforward contract action in a single court.'"[55]

---

[53]    *Ing. Hoschek Autoverleich GES.M.B.H. v. Balag, Ltd.*, No. 93 Civ. 8513, 1994 WL 701989, at *4 (S.D.N.Y. Dec. 14, 1994) (citation and quotations omitted).

[54]    *See id.* ("This Court can discern no way to shape relief in such a way as to avoid prejudice to either the absent party or to the other parties already present in the lawsuit, nor do the parties themselves propose a method.").

[55]    *National Union Fire Ins. Co. of Pittsburgh, PA v. Rite Aid of S.C., Inc.*, 210 F.3d 246, 253 (4th Cir. 2000) (quoting *Acton Co., Inc. of Mass. v. Bachman Foods, Inc.*, 668 F.2d 76, 81 (1st Cir. 1982)).

### c. Adequacy of a Judgment Rendered

The Supreme Court has recently held that "adequacy refers to the 'public stake in settling disputes by wholes, whenever possible.'"[56] In ruling that a judgment would be inadequate, one court has held, "[t]he losing party surely would be tempted to raise [the absent party's] absence as a basis for attacking the judgment, and further litigation would be likely."[57] "[T]his factor concerns the 'social interest in the efficient administration of justice and the avoidance of multiple litigation.'"[58]

### d. Whether Dismissal Would Be Prejudicial to the Plaintiff

When addressing the fourth factor, courts evaluate whether there is an alternative forum for the plaintiff to litigate its claim.[59] Generally, "parties should present their claims in a state court rather than attempt to manipulate jurisdiction

---

[56] *Republic of Phil.*, 128 S.Ct. at 2193 (quoting *Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 111 (1968)).

[57] *Rubler*, 2007 WL 180024, at *3.

[58] *CP Solutions PTE*, 553 F.3d at 160 (quoting *Republic of Phil.*, 128 S. Ct. at 2193). *Accord Global Detection and Reporting, Inc. v. Securetec Detektions-Systeme AG*, No. 08 Civ. 5441, 2008 WL 5054728, at *2 (S.D.N.Y. Nov. 21, 2008) (the public has a "significant interest in avoiding wasteful multiplicitous litigation").

[59] *See, e.g.*, *Rubler*, 2007 WL 188024, at *3 ("[T]he New York state courts provide an adequate alternative forum for relief[.]").

by dropping plaintiffs with a substantial interest in the claim solely for the purpose of retaining jurisdiction in the federal court."[60] However, the availability of an alternative forum is not dispositive.[61]

## IV.   DISCUSSION

### A.   BMS Holdings Is a Necessary Party

Although the signature line references BMS, BMS Holdings is defined as the "Owner" in both the Builder Agreement and the Amendment. Also, the title of the Amendment refers to the Builder Agreement as a contract between Davidson and BMS Holdings. Finally, the subject of the contract – the plant for which Davidson was retained to perform well-drilling services – is owned by BMS Holdings. BMS Holdings is necessarily a party to the contract.[62] Nevertheless,

---

[60]     *Envirotech Corp. v. Bethlehem Steel Corp.*, 729 F.2d 70, 76 (2d Cir. 1984) (citations and quotations omitted). *Accord Global Discount*, 960 F. Supp. at 709 (finding that plaintiff would not be prejudiced with dismissal because of an alternative contract litigation taking place in a different forum).

[61]     *See CP Solutions* PTE, 553 F.3d at 161 ("[W]hen federal diversity jurisdiction will exist if nondiverse parties are dropped, the bare fact that a state court forum is available does not, by itself, make it appropriate to dismiss the federal action.") (quotations omitted); *William A. Gross Constr. Assocs. Inc. v. American Mfrs. Mut. Ins. Co.*, No. 07 Civ. 10639, 2009 WL 427280, at *12 (S.D.N.Y. Feb. 23, 2009) ("[A]lthough state court would be an adequate alternative venue, that single factor is not dispositive.").

[62]     Davidson makes much of the evidence it has presented demonstrating that BMS is a party to the contract. *See* Memorandum of Law in Opposition to

the Second Circuit has held that "a bright-line rule that all parties to a contract are indispensable . . . is inconsistent with Rule 19(b)'s flexible standard."[63]  As a result, I must still determine whether BMS Holdings is a necessary and indispensable party to the pending litigation.

Davidson first claims that it can obtain complete relief from BMS under the Builder Agreement.[64]  Davidson also asserts that BMS Holdings' interests will be protected because any finding regarding BMS will not constitute res judicata against BMS Holdings in another action and "because BMS Holdings will be able to fully assert its claims and defenses in the [Puerto Rican] action."[65]  Finally, Davidson contends that there is no risk of inconsistent obligations because this case involves only monetary damages.[66]  I disagree.

The Rule 19(a)(1) factors are met here.  This Court cannot accord complete relief to Davidson without the joinder of BMS Holdings.  First, the Court

---

Defendant's Motion to Dismiss at 4-7.  However, whether *BMS* is a party to the contract is irrelevant to whether *BMS Holdings* is a necessary and indispensable party to the litigation.

[63]     *CP Solutions PTE*, 553 F.3d at 159.

[64]     *See* Davidson Mem. at 7.

[65]     *Id.* at 8.

[66]     *See id.* at 9 (quoting *Evergreen Marine Corp.*, 942 F. Supp. at 206 and citing *William A. Gross Constr. Assocs. Inc.*, 2009 WL 427280, at *11).

will likely make determinations with respect to the rights and obligations of BMS,

while leaving open the same issues with respect to BMS Holdings. This may have

the effect of denying complete relief to Davidson regardless of the outcome of the

suit against BMS. Should the Court find that BMS is not liable, Davidson will

have to proceed against BMS Holdings. Should the Court find liability against

BMS, but BMS is unable to satisfy the judgment, Davidson will perforce seek to

recover against BMS Holdings in a subsequent action.[67]

There is also no doubt that BMS Holdings has an interest that will be

impaired because of its absence from this litigation. BMS Holdings owns the

Manati Plant and contracted with Davidson for well-drilling services. In addition,

it is the conduct of BMS Holdings that is the focus of the litigation. For instance,

Article 7 of the Builder Agreement – which is the basis of Davidson's claim for

nonpayment – provides that "the Owner [BMS Holdings] will [] pay or cause to be

paid to the Builder the Contract Sum."[68] Although Davidson argues that the

interest of BMS and BMS Holdings are the same and therefore that BMS can

adequately represent the interests of BMS Holdings, a parent and its subsidiary

---

[67] *See Dunn*, 2006 WL 217799, at *4 ("[I]t is difficult to see how plaintiffs could be accorded complete relief if the sole named party with which they contracted is absent from the action.").

[68] Builder Agreement at 5.

19

may not always share the same interests, particularly here where BMS may argue that it has no responsibilities under the Builder Agreement.[69]

Finally, because the Puerto Rican action is proceeding concurrently with the instant action, there is a significant risk that both parties will be subject to inconsistent obligations. For instance, if the Puerto Rico court finds Davidson to have improperly terminated the agreement, but this Court finds that BMS is liable to Davidson, then Davidson will be required to pay damages to one entity while it is entitled to receive payment from another.[70] Such a result is exactly what Rule 19(a)(1) seeks to avoid. Accordingly, BMS Holdings is a necessary party to this litigation.

## B.    BMS Holdings Is an Indispensable Party

BMS Holdings is also an indispensable party. *First*, a judgment in this case will prejudice BMS Holdings. It is likely that this Court will make

---

[69]    *See Hovensa*, 2009 WL 690993, at *1 ("Though [the absent subsidiary] and [the joined parent company] are part of the same corporate family, that does not necessarily make their interests unitary."). *See also Rubler*, 2007 WL 188024, at *3 (noting that the absent subsidiary defendant "is still a separate legal entity with separate rights and obligations" and it is those "rights and obligations that are at the heart of this case.").

[70]    Although this case involves money damages – and not equitable relief – which might place BMS in a situation in which it cannot comply with both court orders, rulings by both courts that simultaneously order BMS or Davidson to pay and be paid would make no sense.

20

findings with respect to BMS Holdings' conduct without its participation. While any rulings here will not constitute res judicata against BMS Holdings, Davidson may assert collateral estoppel with respect to this Court's interpretation of the Builder Agreement in the Puerto Rican action or any subsequent action.

*Second*, the prejudice against BMS Holdings likely cannot be avoided. Davidson argues that the Court could "expressly reference BMS Holdings and exclude any findings it makes regarding same from any decision the Court renders."[71] However, this argument loses much of its power when considered in light of Davidson's contentions that BMS Holdings' interests can be adequately represented by BMS – should Davidson succeed in this action, it will likely argue either that res judicata or collateral estoppel applies to bar BMS Holdings' claims.[72]

*Third*, a judgment rendered in BMS's favor would not be adequate. Such judgment would lead to piecemeal litigation because Davidson would be

---

[71]     Davidson Mem. at 12.

[72]     *See Hovensa*, 2009 WL 690993, at *4 ("As for the argument that [the absent subsidiary] is a shell corporation, there is no evidence beyond the mere assertion that this is so. In fact, [the joined parent company] represents the opposite contention, namely that [the absent subsidiary] has assets."). *See also id.* (where, unlike here, the court noted that the plaintiff suggested no remedy to reduce prejudice, but, like here, "[n]o remedy for these prejudices is apparent to the Court").

forced to litigate its claims against BMS Holdings in a subsequent action.

Although the fact that an action based on the same underlying contract is being

litigated in Puerto Rico is not a determining factor, allowing two actions to

proceed is inefficient and a waste of judicial resources.

　　　　　*Fourth*, Davidson still has an adequate remedy if this action is

dismissed.  It can counterclaim in the Puerto Rico action against BMS Holdings,

and may, as a third-party plaintiff, bring suit against BMS.[73]  Alternatively,

Davidson could file a separate suit against BMS and BMS Holdings in state court.

Moreover, Davidson's contention that the Puerto Rican courts cannot exercise

personal jurisdiction over BMS is unpersuasive.  If Davidson is correct that BMS

is a party to the contract, then the Puerto Rican courts will have jurisdiction over

BMS.[74]  Finally, Davidson will not be prejudiced by dismissal of this action

---

[73]　　*See id.* at *5 ("[P]laintiff also could bring this suit in New York state
court, or alternatively answer and bring counterclaims in the New York state court
action filed by [defendants] . . . Additionally, [plaintiff] has no particularized
interest in a federal forum here.  While they may have a generalized interest in the
forum of their choice, none of the parties have a specific connection to New York,
mitigating against any fear of bias from state courts or juries.") (citation omitted).

[74]　　Indeed, BMS has conceded that it will be subject to personal
jurisdiction under the Puerto Rican long-arm statute. *See* BMS's Reply
Memorandum of Law in Further Support of Its Motion to Dismiss, at 9 (citing P.R.
Laws Ann. tit. 32 ap. III, Rule 4.7(a)(1) ("Whenever the person to be served is not
domiciled in Puerto Rico, the General Court of Justice shall take jurisdiction over
said person if the action or claim arises because said person: (1) Transacted

because discovery has yet to commence and a judgment on the merits is not

imminent.[75] Accordingly, BMS Holdings is an indispensable party.[76]

---

business in Puerto Rico personally or through an agent . . .").

[75]    *See CP Solutions PTE*, 553 F.3d at 160 ("In evaluating this factor,
'[w]e are influenced by the procedural posture in which this case comes to us.'
Although the case has not yet been tried, the parties have litigated for over two
years, including conducting discovery. It would make little sense to require them
to start over in state court simply because an asset-less, dissolved subsidiary of a
diverse defendant cannot be joined in federal court. ") (quoting *Merrill Lynch &
Co. v. Allegheny Energy, Inc.*, 500 F.3d 171, 180 (2d Cir. 2007) and citing
*Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 836 (1989)).

[76]    Other courts in this district have held in similar situations that a
subsidiary is both a necessary and indispensable party. In *Hovensa*, the plaintiff
sued only a non-signatory parent corporation because suing the signatory
subsidiary corporation would have destroyed diversity jurisdiction. *See Hovensa*,
2009 WL 690993, at *1. The court found the absent party necessary because
complete relief could not be afforded without the presence of the subsidiary. *See
id.* at *3. The court then found that the absent subsidiary party was indispensable.
*See id.* at *4-5. In *Dunn*, the plaintiff amended his complaint to drop the signatory
to his employment agreement but added that signatory's parent corporation. *See
Dunn*, 2006 WL 217799, at *2. The court deemed the subsidiary necessary – and
later indispensable – because it was difficult to imagine how Dunn would have
been awarded complete relief without joining the party "named" in the contract.
*See id.* at *4. Further, the court ruled, "[t]he documents submitted by the parties,
as well as the wording of Dunn's original complaint, firmly establish that [the
absent subsidiary] was plaintiffs' employer . . . . The omission of [the absent
subsidiary] from the current iteration of the Complaint is nothing more than artful
pleading designed to avoid destroying the basis for federal diversity jurisdiction
over the action." *Id.* at *3. The facts in this case are substantially similar, with the
great weight of the evidence – including Davidson's original Complaint –
indicating that BMS Holdings was a party to the Builder Agreement.
Accordingly, Davidson's Amended Complaint also appears to be nothing more
than artful pleading designed to avoid destroying diversity jurisdiction.

23

### C.     This Court Lacks Jurisdiction to Hear This Claim

Because BMS Holdings is a necessary and indispensable party, it

must be joined to this suit pursuant to Rule 19.  However, diversity jurisdiction is

destroyed when two alien corporations are found on both sides of a case.[77]

Because Davidson's Complaint raises only state-law claims, this Court lacks

subject matter jurisdiction, and the case must be dismissed.

## V.     CONCLUSION

For the foregoing reasons, BMS's motion to dismiss is granted.[78]  The

Clerk of the Court is directed to close this motion (Docket # 15) and this case.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:        New York, New York
              July 15, 2009

---

[77]     *See Corporacion Venezolana de Fomento*, 629 F.2d at 790 ("[T]he presence of aliens on two sides of a case destroys diversity jurisdiction.") (citation omitted).

[78]     Davidson's request to hold this opinion in abeyance either while discovery is conducted in this action to ascertain the true parties to the Builder Agreement or while it engages in discovery to determine if it may join BMS in the Puerto Rican action is also denied.  *See* Davidson Mem. at 3.

24

## -Appearances-

**For Davidson Well Drilling, Ltd.:**

Edward J. Sheats, Jr., Esq.
Sheats & Associates, P.C.
P.O. Box 820
9650 Brewerton Road
Brewerton, New York 13029
(315) 676-7314

**For Bristol-Myers Squibb Company:**

Henninger S. Bullock, Esq.
Andrew J. Calica, Esq.
Mayer Brown LLP
1675 Broadway
New York, New York 10019
(212) 506-2500